CAUSE NO. C J-14-1737

| | | |
|---|---|---|
| THOMAS C. HOLLENSHEAD, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs | § | 59 JUDICIAL DISTRICT |
| | § | |
| NATIONAL RESIDENTIAL ASSETS | § | |
| CORP, BANK OF AMERICA, N.A., | § | |
| and SOCA FUNDING, L.L.C., | § | |
| | § | |
| Defendants. | § | GRAYSON COUNTY, TX |

## ORIGINAL PETITION FOR WRONGFUL EXECUTION, APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND FOR HEARING ON APPLICATION FOR TEMPORARY INJUNCTION

Comes now Plaintiff, Thomas C. Hollenshead, and for cause of action against

Defendants National Residential Assets Corp., Bank of America, N.A., and SOCA

Funding, L.L.C., alleges as follows:

**1.    Discovery Level**

Plaintiff intends to conduct discovery under Level ___ of Rule 190 of the

Texas Rules of Civil Procedure.

**2.    Jurisdiction and Venue**

The amount in controversy is within the Court's jurisdictional limits. Venue

is proper because the property is located in Grayson County, Texas.

## 3.   Parties

Plaintiff is an individual who resides at 12900 Van Alstyne Parkway, Van Alstyne, Grayson County, Texas.

Defendant National Residential Assets Corp. (hereinafter referred to as "National"), is a New York corporation.

Defendant Bank of America, N.A. (hereinafter referred to as "Bank of America"), is a North Carolina banking association.

Defendant, SOCA FUNDING, L.L.C. (hereinafter referred to as "SOCA"), is a limited liability company with its principal place of business in Texas. SOCA is the assignee of FIRST FEDERAL COMMUNITY BANK who assigned a money judgment it recovered against METS GROUP, INC., and THOMAS HOLLENSHEAD, on May 24, 2010.

## 4.   Service of Process

Plaintiff has been unable to find record of a service agent in Texas for Defendant National.

Defendant Bank of America may be served with process by serving its registered agent in Texas, CT Corporation, 350 N. St. Paul Street, Dallas, Texas.

ORIGINAL PETITION FOR WRONGFUL EXECUTION, APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND FOR HEARING ON APPLICATION FOR TEMPORARY INJUNCTION - Page 2

Defendant SOCA may be served with process by serving its registered agent at 3346 East T. C. Jester, Suite B-23, Houston, TX 77018.

5.    **General Factual Background**

Defendant National is the current holder of the mortgage loan that is the subject of Plaintiff's causes of action. Defendant Bank of America is the "loan servicer" for National on the subject mortgage loan. "Loan servicers" such as Bank of America provide "servicing" of home loans for various parties who own the right to receive payments on the loans (hereinafter referred to as "holders"). These holders are often investors, securitized trusts, or banking institutions that do not have the infrastructure to collect payments from borrowers or, in their business judgment, have found it preferable to use a "servicer," such as Bank of America.   The exact type of "servicing" that a "servicer" performs is often controlled by private contract or government regulation, depending on the type of loan. "Servicing" generally includes such functions as collecting payments, communicating with the borrowers on the holder's behalf and, in some cases, administering a foreclosure.

In the instant case, Defendants agreed to participate in the "Home Affordable Modification Program" (hereinafter referred to as "HAMP"), which is a program developed by the U.S. Department of Treasury to assist at-risk homeowners

restructure their mortgages to avoid foreclosure.[1] Under the terms of the program, the Treasury Department provides financial incentives for banks to reduce homeowner's monthly mortgage payments to sustainable levels.[2]

In order to participate in HAMP, loan servicers must execute a servicer participation agreement with Fannie Mae as agent for the Treasury Department.[3] The HAMP guidelines place heightened requirements on participating servicers to modify the original terms of the mortgage loans in certain circumstances described by the program. Plaintiff is one of many homeowners who qualified for a loan modification pursuant to the numerous federal and state guidelines for such modifications as stated herein.

After months, in fact years, of being shuffled through Defendants' various departments with assurances that he met the guidelines for a loan modification and with the refusal of Defendants to accept loan payments, as will be described below, Plaintiff is now faced with the threat of a foreclosure sale on November 4, 2014, rather than the promised modification.

---

[1] *See* Home Affordable Modification Program, Supplemental Directive 09-01, Apr. 6, 2009.

[2] *See* Home Affordable Modification Program Guidelines, March 4, 2009.

[3] *See* HAMP Supplemental Directive 09-01 at 1.

ORIGINAL PETITION FOR WRONGFUL EXECUTION, APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND FOR HEARING ON APPLICATION FOR TEMPORARY INJUNCTION - Page 4

6. **Specific Factual Background**

On August 25, 2005, Plaintiff took out a mortgage for $489,600.00 from Defendant Bank of America, who was the original creditor, to purchase a home located at 12900 Van Alstyne Parkway, Van Alstyne, TX 75495. Subsequently, without Plaintiff's knowledge and with no notice to Plaintiff until on or around October 16, 2014, the mortgage was transferred to National.

In January 2009, Plaintiff suffered significant business losses as a result of the down turn in the economy. By March, he was unable to make the March and April mortgage payments. Defendant Bank of America sent him a letter requesting that he contact the loan modification department to determine whether he could qualify for a loan modification that would reduce the monthly payments.

Thereafter, Plaintiff contacted Bank of America but learned that he would not be considered for a loan modification until he was at least three payments behind. At that time, the Bank of America representative actually encouraged Plaintiff to miss another payment so that he could qualify for the modification. Plaintiff later learned that, once he was three months behind in his mortgage payments, Bank of America would not accept any payments unless and until he qualified for the loan modification.

ORIGINAL PETITION FOR WRONGFUL EXECUTION, APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND FOR HEARING ON APPLICATION FOR TEMPORARY INJUNCTION - Page 5

Not realizing the effect of missing the third payment, Plaintiff did not make the May 2009 payment and was then over 90 days in arrears on his mortgage. Plaintiff resumed making payments the following month. When the payment was returned to him he learned of Bank of America's policy not to accept payments once the mortgage payments were in arrears more than 90 days. Although Plaintiff spoke to numerous representatives of Bank of America and continued sending payments in subsequent months, he was unable to get any information as to why he had been advised to miss three payments and was now facing potential foreclosure because his payments were being returned to him.

Finally, on July 1, 2010, Plaintiff completed the forms for a loan modification and sent them via fax to Bank of America. Plaintiff followed up by calling the Defendants' modification department approximately 10 days later. At that time, the loan modification representative told him that no record of his application could be found. The representative then gave Plaintiff a different fax number and instructed him to submit the application again. Plaintiff followed the instructions but heard nothing from the representative, nor from any other representative of Bank of America. When another 7 days passed and he had not heard from Defendants'

modification department, Plaintiff called to inquire as to the status of his application and was again told that they had no record of receiving anything from him.

Plaintiff repeated the same process, i.e., resending the application, calling to check the status, being told they had no record of his application, and resending again, on at least three more occasions. He was given a different fax number each time he called. Eventually, he was given a telephone number for a representative who had been assigned to his case. However, when Plaintiff called that number, the telephone was answered by a recording and he was placed on hold. Plaintiff attempted to reach the representative of the modification department numerous times over the next several months and, each time, the call was answered by a recording and he was placed on hold. Many times, he waited for long periods of time, sometimes between 30 minutes to an hour, and would finally hang up, not having spoken to anyone.

In December of 2010, plaintiff finally spoke with another representative and was given another fax number. Again, he resubmitted the application to yet another fax number. This time, when he followed up, he learned that his application had been received. By this time, Plaintiff was in arrears over 21 months because of Bank of America's refusal to accept his payments.

ORIGINAL PETITION FOR WRONGFUL EXECUTION, APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND FOR HEARING ON APPLICATION FOR TEMPORARY INJUNCTION - Page 7

Over the months that ensued and after speaking to several different loan modification representatives, Plaintiff began to learn that they were nothing more than corporate bureaucrats who had no authority and were merely reading from a script or "canned" answers on a computer screen. They would be polite, attempt to be helpful but would not be able to move Plaintiff's loan modification forward. Plaintiff began to realize that these representatives were overwhelmed by the whirlwind of foreclosures and loan modification requests that were being received by Bank of America. Frustrated with the lack of progress and the inability to get any concrete answers about the status of his loan modification application, Plaintiff would ask to speak to a supervisor.

Plaintiff's request to speak with a supervisor would be met with a polite request to place him on hold. He would then hold for as much as 20 minutes and then the call would terminate without anyone having answered. On the few occasions a new person, who purported to be a supervisor, would answer. However, those individuals appeared to have no more authority and no more information than the purportedly lower level representatives.

On several occasions, Plaintiff expressed his frustration that, because of the inept and incompetent Bank of America employees, he was facing losing his home.

ORIGINAL PETITION FOR WRONGFUL EXECUTION, APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND FOR HEARING ON APPLICATION FOR TEMPORARY INJUNCTION - Page 8

What followed was three years of the bank losing paper work and Plaintiff having to begin all over again. Finally, however, and after sending updated documents and applications over and over again, Plaintiff was advised that he had provided all the documentation necessary to meet the guidelines for a modification.

After years of working with Defendants, years of frustration, years of resending applications and updated documentation, in June 2014, Plaintiff was advised that, although he met the criteria for the Home Affordable Modification Program (HAMP), the investor, Bank of New York, was turning down his request for modification. No further explanation was given.

On October 16, 2014, Plaintiff received a letter from Harvey Law Group, a law firm located in Houston, Texas, advising of his "rights" and making demand for payment in full for $658,975.55, an amount far in excess of the original loan amount and of the market value of the property. Plaintiff called the law firm and was put in touch with someone he believed to be an attorney who advised that, unless he paid that amount in full, Bank of America would proceed with foreclosure even if he disputed the debt. Thereafter, Plaintiff notified the law firm that he disputed the debt. He learned as recently as October 30, 2014, that the law firm had no record of receiving his letter disputing the debt. He resent it on that day.

ORIGINAL PETITION FOR WRONGFUL EXECUTION, APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND FOR HEARING ON APPLICATION FOR TEMPORARY INJUNCTION - Page 9

SOCA has attempted to execute on the judgment assigned to it by First Federal Community Bank by offering for sale the property which is the subject of this suit at public auction. Plaintiff has provided proof to SOCA that the property is subject to a mortgage in favor of Bank of America (which was thought to be true until Plaintiff received notice that the current creditor is National) and that the lien claimed by Bank of America exceeded the market value of the property. After the first writ of execution was issued at SOCA's request, the 62nd Judicial District Court of Lamar County, Texas (the court from which the execution issued) granted Plaintiff a temporary injunction to allow Plaintiff time to complete the loan modification process with Bank of America.

Once again SOCA has obtained a writ of execution and the subject property has been advertised for public auction on November 4, 2014, by Constable Bob Douglas of Van Alstyne, Texas.   Since receiving notice of the new writ of execution and as stated above, Plaintiff has been notified by Bank of America of its intention to sell the property at public auction on November 4, 2014. In the interest of justice and due to its position as an inferior lien holder, any right SOCA has to proceed with its writ of execution should be stayed until such time as Plaintiff's claims against National and Bank of America have been resolved.

ORIGINAL PETITION FOR WRONGFUL EXECUTION, APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND FOR HEARING ON APPLICATION FOR TEMPORARY INJUNCTION - Page 10

## Cause of Action

7.   <u>Violation of the Real Estate Settlement Procedures Act</u>

Defendant Bank of America is a servicer of a federally regulated mortgage loan within the meaning of the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA"), 12 U.S.C. § 205.  Defendant's conduct has violated RESPA in the following respects.

Plaintiff sent Defendant Bank of America written application for a loan modification, including a hardship affidavit and written submissions of financial information that were "qualified written requests" within the meaning of RESPA, in that Plaintiff sought information about his eligibility for a loan modification or other methods to minimize their losses.  Defendant Bank of America failed to respond in a proper and timely way to Plaintiff's "qualified written requests" for information about his mortgage account by failing to provide Plaintiff with the information requested or explain why the information sought was unavailable in violation of 12 U.S.C. § 2605(e).

Plaintiff suffered damages including, but not limited to loss of credit rating, notice of foreclosure, embarrassment and humiliation.  Plaintiff's damages were

proximately caused by Defendant Bank of America's non-compliance with the requirements of the mortgage servicer provisions of RESPA.

Defendant Bank of America has engaged in a pattern and practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA and Plaintiff is thus entitled to $1,000 in statutory damages for each violation and to attorney fees under 12 U.S.C. § 2605(f)(3).

## 8. Violations of Fair Debt Collection Act

The Consumer Credit Protection Act, 15 U.S.C. 1601, *et seq.*, as amended by Public Law 104-208, 110 Stat. 3009 (Sept. 30, 1996), prohibits certain abusive practices by debt collectors. These prohibitions are commonly known as the Fair Debt Collection Practices Act (hereinafter referred to as the "Act"). In relevant part at § 809, the Act provides as follows:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt, or any disputed portion thereof,* until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

Although Plaintiff was first contacted by Bank of America in early 2009 and

submitted his first application for a loan modification in July 2010, he did not receive

the notices and information required by the Act until October 16, 2014.  He has

subsequently given notice that he disputes the debt.  However, Bank of America has

not "ceased collection of the debt" as required by § 809(b) of the Act, in that Plaintiff

has been notified that Defendants intend to sell the house at auction on November 4, 2014.

Moreover, Defendants have not heretofore notified Plaintiff that the original creditor, Bank of America, N.A., is no longer the creditor. Instead, the current creditor is National, from whom Plaintiff has never received any communication or information relating to his application for loan modification.

9.    **Violation of the Texas Property Code**

A mortgage servicer may administer the foreclosure of a property on behalf of a mortgagee only when that servicer is acting pursuant to a servicing agreement. Tex. Prop. Code Ann § 51.0025. Prior to October 16, 2014 Plaintiff had never received notice the loan was being transferred to National nor that Bank of America would be servicing the loan on behalf of National. Plaintiff has been provided no documentation to show that Bank of America has the authority to act for National nor has Bank of America provided any authority to conduct a foreclosure sale.

Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, more commonly known as the exas Declaratory Judgments Act, Plaintiff requests that the Court declare that Defendant Bank of America is without authority to conduct a foreclosure sale regarding the subject property and enter emergency, temporary and

permanent injunctive relief prohibiting Defendant Bank of America from conducting

a foreclosure sale of the property and award Plaintiff his attorney fees.

## 10. Attorneys Fees, Expenses and Costs of Court

In order to prosecute this action, Plaintiff has been required to retain the

services of Sharon M. Easley as its attorney. Accordingly, Plaintiff is entitled to

recover its attorney's fees, costs and expenses incurred in the prosecution of this

action pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code and

pursuant to the express terms of the agreements.

## 11. Requested Relief

Unless Defendants National, Bank of America and SOCA are immediately

restrained and enjoined from proceeding with the sale of the subject property at

public auction on November 4, 2014, Plaintiff will suffer immediate and irreparable

loss. Plaintiff clearly has no adequate remedy at law for damages it has incurred and

will continue to incur in the sale is allowed to happen. A temporary restraining order

enjoining Defendants as requested herein is necessary to maintain the status quo and

to protect the rights and interests of Plaintiff. Accordingly, Plaintiff requests the

Court to grant a Temporary Restraining Order, without notice, restraining Defendants

and each of them from offering the subject property for sale at public auction on

November 4, 2014, and from requesting any subsequent writs of execution until such time as Plaintiff's claims against National and Bank of America have been resolved.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Court enter a Temporary Restraining Order as described herein to preserve the status quo and, after hearing, that a Temporary Injunction and Permanent Injunction as requested herein be entered, for an award of damages, including but not limited to actual damages, attorney's fees, pre-judgment and post judgment interest and costs of suit, and that Plaintiff be awarded such other and further relief, whether at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

SHARON M. EASLEY
Texas Bar No. 06358440
2309 Coit Road, Suite C
Plano, TX 75075
(972) 758-9999 OFFICE
(972) 632-1301 FAX
(214) 929-0002 MOBILE
sharoneasleylaw@gmail.com

ATTORNEY FOR PLAINTIFF

ORIGINAL PETITION FOR WRONGFUL EXECUTION, APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND FOR HEARING ON APPLICATION FOR TEMPORARY INJUNCTION - Page 16

**VERIFICATION**

STATE OF TEXAS       §
                        §

COUNTY OF GRAYSON    §

      The undersigned, being first duly sworn, under oath states that he is the Plaintiff in the foregoing action, that he has read the above Original Petition for Wrongful Execution, Application for *Ex Parte* Temporary Restraining Order and Temporary Injunction and for Hearing on Application for Temporary Injunction and that the statements therein made are within his personal knowledge and are true.

_____

Thomas C. Hollenshead

Subscribed and sworn to before me on _____, 2014.

_____

Notary Public with and for
the State of Texas